**ELVIS E. BRITO, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-0103

Supreme Court of the Virgin Islands

September 30, 2010

434

MARK L. MILLIGAN, ESQ., Mark L. Milligan, P.C., St. Croix, USVI, *Attorney for Appellant.*

MATTHEW C. PHELAN, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; SWAN, *Associate Justice*.

## OPINION OF THE COURT

(September 30, 2010)

CABRET, J. The People of the Virgin Islands charged Elvis Brito with one count each of being an accessory after the fact and misprision of felony for helping a prisoner who escaped from the Golden Grove Correctional Facility ("Golden Grove") on St. Croix. Following trial, a jury found Brito guilty of being an accessory after the fact, but acquitted him of misprision of felony. Brito filed this appeal challenging the sufficiency of the evidence supporting his conviction, the Superior Court's jury instructions, the court's exclusion of evidence at trial, its failure to advise him of his right to appeal, and the court's rulings in post-sentence proceedings. For the reasons which follow, Brito's conviction will be affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

The record shows that on August 8, 2007, Yocauris Torres escaped from Golden Grove. Upon leaving the prison, Torres headed for Brito's apartment in Christiansted, St. Croix. Brito took Torres into his apartment

435

and agreed to help him leave St. Croix and go to Vieques by boat if Torres paid him $3000. On Sunday, August 26, 2007, Torres gave Brito $1500 in twenty dollar bills, agreeing to pay the balance when Torres arrived in Vieques. Brito and Torres got into Brito's vehicle, and Brito drove to Altona Lagoon on St. Croix, where a boat was ostensibly waiting to take Torres to Vieques.

That same day, Leonardo Carrion, an investigator with the Virgin Islands Department of Justice, received an anonymous tip that Torres could be found at Altona Lagoon in a dark colored sports utility vehicle with plastic covering a missing rear window. Carrion informed other law enforcement agencies of the tip, all of which converged in the area of Altona Lagoon to intercept Torres. When Carrion saw a sports utility vehicle matching the description driving toward the dock at Altona Lagoon, police officers stopped the vehicle. Brito was driving, and Torres was found lying across the back seat with a hat over his face. Police arrested both men, and while searching Brito they recovered $1500 in twenty dollar bills. In searching Torres, police recovered $501 and a passport.

The People charged Brito, by information, with being an accessory after the fact, alleging that Brito, "knowing that a crime or offense ha[d] been committed, namely an Escape Prisoner, did unlawfully receive, relieve, comfort or assist [Torres], an escapee, in order to hinder or prevent his apprehension, to wit: by driving [Torres] to Altona Lagoon beach in order to leave the island by boat . . . ."[1] (J.A. 9.) Brito was also charged with misprision of felony for allegedly willfully concealing Torres's escape from authorities.[2]

Torres subsequently pled guilty to escaping from custody and robbery, and as part of a plea deal other charges filed against him were dismissed. Torres testified at Brito's trial, where he stated that after he escaped from prison, Brito agreed to help him flee St. Croix to Vieques by boat in exchange for $3000. According to Torres, Brito gave him food and clothing, and Torres hid in Brito's apartment in the days before he was scheduled to leave St. Croix. Torres said that on the morning of the planned escape from St. Croix, he paid Brito $1500 in twenty dollar bills and agreed to pay him the balance upon his arrival in Vieques.

---

[1] See V.I. CODE ANN. tit. 14, § 12(a) (1996).
[2] See 14 V.I.C. § 13.

In his defense, Brito testified that on the Sunday of his arrest he was driving to a beach party at Altona Lagoon and gave Torres, who was hitchhiking, a ride. According to Brito, he was stopped by the police and arrested while in route. Brito claimed that the $1500 police found on him was money from his paycheck that he cashed the previous Friday. Brito's neighbor testified that he had never seen Torres before Brito's arrest, and he further stated that the apartment that Torres claimed to have been hiding in was not Brito's apartment, but that Brito's apartment was actually across the street.

While the jurors were deliberating, they sent a note to the judge stating: "Please clarify charge Count 1, to wit: By driving Yocauris Torres to the Altoona [sic] Lagoon beach in order to leave the island by boat. 'Question. Do you take this section — do we take this section into account when deciding?' " (J.A. 361.) In response to the note, the judge brought the jurors into the courtroom and reread the original jury instructions on intent and on the elements of being an accessory after the fact. The court's instructions on the elements of the offense substantially mirrored the language presented in title 14, section 12(a) of the Virgin Islands Code, which defines an accessory after the fact. After the jury returned to deliberate, Brito objected to the court's supplemental instruction. Brito argued that, in addition to the elements included in the Superior Court's instruction, the court should have charged the jury that it could only find him guilty based on the specific conduct alleged in the Information — that he assisted Torres in his escape by driving to Altona Lagoon beach in order to leave the island by boat. The court overruled the objection, and a short time later, the jury returned a verdict finding Brito guilty of being an accessory after the fact and acquitting him of misprision of felony.

On appeal, Brito argues that the Superior Court's supplemental charge constructively amended the Information and that the evidence was insufficient to support his conviction. Brito further asserts that the Superior Court erred by refusing to admit certain exhibits into evidence, by failing to advise him of his right to appeal, and by failing to properly rule in post-sentence proceedings.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which vests the Supreme Court with

jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court."

In reviewing Brito's challenge to the sufficiency of the evidence,

> we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People. We will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009) (citations and quotation marks omitted). Because Brito did not contemporaneously object at trial to the Superior Court's supplemental jury instruction on being an accessory after the fact, we review his claim for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure.[3] *See* FED. R. CRIM. P. 30(d); *United States v. Marcus*, ___ U.S. ___, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010) (citations omitted). We review the Superior Court's ruling on the admissibility of evidence for an abuse of discretion, *Blyden v. People*, 53 V.I. 637, 655 (V.I. 2010), and we exercise plenary review of its legal determinations. *People v. John*, 52 V.I. 247, 255 (V.I. 2009).

## III. DISCUSSION

### A. The Superior Court's Supplemental Instruction Was Not Plain Error.

Brito asserts that the Superior Court constructively amended the Information in its supplemental jury charge because it failed to inform the jurors that they needed to find him guilty of being an accessory after the fact based on the specific conduct alleged in the "to wit" clause of the Information. According to Brito, the court should have instructed the jurors that, to find him guilty of being an accessory after the fact, they must find that he drove Torres to Altona Lagoon beach so that Torres could leave the island by boat. As noted by the People, however, Brito

---

[3] Federal Rule of Criminal Procedure 52(b), as well as the other Federal Rules of Criminal Procedure discussed in this Opinion, are made applicable to criminal proceedings in the Virgin Islands Superior Court pursuant to Superior Court Rule 7, which states that: "[t]he practice and procedure in the [Superior] Court shall be governed by the Rules of the [Superior] Court and, to the extent not inconsistent therewith . . . the Federal Rules of Criminal Procedure . . . ."

failed to object to the Superior Court's general charge to the jury which referenced only the elements required by title 14, section 12(a), and Brito stated at the conclusion of the court's general charge that he was satisfied with the instructions. Moreover, Brito did not contemporaneously object to the court's supplemental charge which he now asserts as error, but instead waited until the jurors returned to the jury room to resume their deliberations. Because Rule 30(d) of the Federal Rules of Criminal Procedure requires a contemporaneous objection,[4] the asserted error is reviewed for plain error under Rule 52(b).

 We conclude that the Superior Court's supplemental instruction did not constitute error, much less plain error. In support of his assertion that the Superior Court erred in omitting the "to wit" clause from its supplemental jury instruction on the elements of the offense, Brito relies on cases which properly hold that it is reversible error for a court to constructively amend an *indictment* because such an amendment violates a defendant's grand jury rights under the Fifth Amendment to the United States Constitution.[5] *See, e.g., United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (cited by Appellant and recognizing that "[a] constructive amendment to the indictment constitutes 'a *per se* violation of the fifth amendment's grand jury clause.' " (quoting *United States v. Syme*, 276 F.3d 131, 154 (3d Cir. 2002))). But Brito was charged by information, not by indictment, and the rule prohibiting a trial court from amending an indictment does not apply. *See Gov't of the V.I. v. Bedford*, 671 F.2d 758, 764-65 (3d Cir.1972) (explaining the difference between amending an information and amending an indictment);[6] 1 Charles Alan Wright, Andrew D. Leipold, *Federal Practice and Procedure* § 129 (4th ed. 2009)

---

[4] Rule 30(d) provides:

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

[5] "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. CONST. amend. V.

[6] Citing *Rex v. Wilkes*, 4 Burr. 2527 (1770), the court observed:

> The difference between amending an information and amending an indictment was explained long ago by Lord Mansfield: There is a great difference between amending indictments and amending informations. Indictments are found upon the oath of a jury,

("A federal information differs from an indictment in that an information is a charge by a United States Attorney rather than by a grand jury. Since the prosecutor is the sole source of the charge he or she is equally free to change it, and the restrictive rules forbidding an amendment of an indictment have no application to an information."). In fact, Rule 7(e) of the Federal Rules of Criminal Procedure, which expressly permits the Superior Court to amend an information, provides: "Unless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding."

██ ██ In this case, the Superior Court's supplemental instruction did not charge an additional or different offense, or prejudice Brito's substantial rights, but merely omitted surplusage from the Information. The Information charged Brito with being an accessory after the fact, alleging that "knowing that a crime or offense has been committed, namely an Escape Prisoner, [he] did unlawfully receive, relieve, comfort or assist [Torres], an escapee, in order to hinder or prevent his apprehension, to wit: by driving [Torres] to Altona Lagoon beach in order to leave the island by boat . . . ." (J.A. 9.) The forgoing language properly alleged the required elements of being an accessory after the fact and notified Brito that he was being charged as an accessory for assisting Torres, who had just escaped from prison. *See* 14 V.I.C. § 12(a). The "to wit" clause at issue did not allege any fact that was a necessary element of the charged crime and did not alter which facts the People were required to prove to establish Brito's guilt. As such, the facts alleged in the "to wit" clause were mere surplusage, and the Superior Court did not err in omitting these alleged facts from its charge to the jury. *See United States v. Milestone*, 626 F.2d 264, 269 (3d Cir. 1980) ("We conclude, therefore, that deleting the reference to Agent Mastrogiovanni in Count III was not an amendment to the indictment and was, at the most, only the removal of surplusage on the motion of the defendant."); *see also United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) ("We treat the allegation of additional facts beyond those which comprise the elements

---

and ought only to be amended by themselves; but informations are as declarations in the king's suit. An officer of the crown has the right of framing them originally, and may, with some, amend in like manner as any plaintiff may do.

*Bedford*, 671 F.2d at 765 n.11.

of the crime as 'mere surplusage.' " (quoting *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992))); *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) ("The district court did not err by refusing to instruct the jury to find an element that really isn't an element. The failure to include in the instructions surplusage from the information was not error because only the 'essential elements' of the charge need be proven at trial." (citation omitted)); *State v. Navarro*, 621 A.2d 408, 412 (Me. 1993) (permitting the deletion of surplusage that "does not alter any fact that must be proved to make the act charged a crime"); Wright, *supra*, at § 128 ("The court may strike surplusage without impermissibly amending an indictment, and . . . need not submit to the jury extraneous statements in the indictment not essential to the allegation of an offense."). Under these circumstances, the Superior Court's supplemental jury instruction was not plain error.

## B. The Evidence Was Sufficient To Sustain Brito's Conviction.

■ The Virgin Islands Code defines an accessory after the fact as follows: "Whoever, knowing that a crime or offense has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." 14 V.I.C. § 12(a). Brito argues that he should have been acquitted of being an accessory after the fact because "[a] careful review of the entire record shows the lacks [sic] any evidence that Appellant was prepared to facilitate Torres's getaway from the island of St. Croix by boat." (Appellant's Br. 11.) As explained above, however, the factual allegation in the "to wit" clause of the Information, upon which Brito relies, was mere surplusage that the People were not required to prove at trial. *See Navarro*, 621 A.2d at 412. Thus, the evidence was not rendered insufficient because it failed to show that Brito had made all the preparations to facilitate Torres's escape to Vieques by boat. Rather, a rational trier of fact could have found Brito guilty based on the evidence showing that he was apprehended while driving Torres to Altona Lagoon in furtherance of Torres's attempt to evade capture. Although Brito claimed that Torres was merely a hitchhiker whom he was giving a ride, the jurors were free to disbelieve this testimony, especially considering the fact that the police found the purported hitchhiker hiding in the back seat of Brito's car. *See Smith*, 51 V.I. at 401 ("To the extent that there were conflicts in the testimony, these conflicts presented credibility issues for

the jurors to resolve.") Thus, viewed in a light most favorable to the People, the evidence at trial was sufficient for a rational trier of fact to find Brito guilty beyond a reasonable doubt of being an accessory after the fact.

## C. The Superior Court's Exclusion of Brito's Exhibits Was Not Reversible Error.

■ Brito also asserts that the Superior Court erred by refusing to admit three exhibits he tendered into evidence: a copy of Torres's plea agreement and two hand-drawn sketches that purported to show the floor plan of Brito's apartment and the surrounding area. Although the People do not address this assertion in their brief, the transcript shows that Torres testified about his guilty plea and stated that he was awaiting sentencing on his plea. The transcript further shows that Brito's attorney questioned him about the facts underlying the plea. In moving the court to admit a copy of the plea, Brito's counsel asserted that "[t]he document has relevance in the sense that it shows motive, shows the interest of Mr. Torres in testifying." (J.A. 283.) The court rejected Brito's motion, finding that the jury already knew about Torres's guilty plea and that Torres was awaiting sentencing on the plea. Considering that the jury had before it ample evidence of Torres's guilty plea, the Superior Court did not abuse its discretion in excluding a copy of the plea which Brito tendered to support his speculation that Torres's testimony was motivated by unspecified government promises. *See United States v. Rodriguez-Andrade*, 62 F.3d 948, 953 (7th Cir. 1995).

The other two exhibits, hand-drawn diagrams of Brito's apartment and the surrounding area, were drawn by one of Brito's neighbors who testified at trial. The neighbor stated that he never saw Torres in Brito's apartment, and Brito attempted to use the diagrams at trial to show that Torres misidentified Brito's apartment as the place where he was hiding. The witness acknowledged that the diagrams were not drawn to scale, but insisted that they were otherwise accurate depictions of the buildings. The Superior Court nonetheless excluded both diagrams, finding that they lacked "sufficient reliability" (J.A. 191) and that the witness had "absolutely no drawing . . . experience." (J.A. 193.)

■■ While the decision of whether to admit this evidence was within the Superior Court's discretion, *see Blyden*, at 647, we are concerned by the court's reasoning in this case. Although the court was rightly concerned with the accuracy of the diagrams, as a general rule

the requirement as to accuracy does not extend to strict mathematical accuracy, or absolute accuracy, and the mere fact that a sketch or map is not drawn to scale, or the possibility that a map incorporates inaccuracies, or that a certain object shown on a map is out of proportion to other objects shown, does not require its exclusion, if it is a fair representation of the situation in question.

32A C.J.S. *Evidence* § 1243 (West Update 2010) (footnotes omitted); *accord Hamilton v. State*, 348 Ark. 532, 74 S.W.3d 615, 619 (2002) (" '[M]aps, drawings and diagrams illustrating the scenes of a transaction and the relative location of objects, if shown to be reasonably accurate and correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case." (citations omitted)); *Schweitzer v. State*, 531 N.E.2d 1386, 1389 (Ind. 1989) ("The admission of a drawing of the crime scene is also within the discretion of the trial court. The drawing need not be a perfect depiction of the scene where its purpose is to assist the jury in understanding the testimony of a witness." (citation omitted)). But even if the Superior Court erred in excluding the diagrams because they lacked absolute accuracy, Brito would not be entitled to relief unless "the excluded evidence would probably have had a substantial influence in bringing about a different verdict or finding." 5 V.I.C. § 775 (1997). Brito has made no such showing here, and considering the overwhelming evidence that Brito was found harboring Torres in the back seat of his car, we conclude that the excluded evidence would probably have had no influence in bringing about a different verdict. Accordingly, Brito is not entitled to a new trial on this ground. *See id.*

### D. The Superior Court's Failure to Advise Brito of His Appeal Rights is Harmless Error.

■ Brito asserts that the Superior Court erred by not advising him of his right to appeal as required by Rule 32(j)(i)(A) of the Federal Rules of Criminal Procedure. Inasmuch as Brito timely appealed his conviction, we cannot discern how his substantial rights could have been affected by the Superior Court's failure to notify him of his right to appeal. Thus, this error is harmless and must be disregarded. *See* FED. R. CRIM. P. 52(a).

### E. This Court Lacks Jurisdiction to Consider Brito's Challenge to the Superior Court's Rulings in Post-Sentence Proceedings.

Brito asserts that the Superior Court violated his due process rights in its post-sentence proceedings. The asserted violations stem from the

Superior Court's sentencing order which required Brito to serve six weekends incarceration "beginning Friday, November 28, 2008." (J.A. 422.) Brito apparently reported to the Bureau of Corrections ("BOC") on that date, but was turned away because the Superior Court had not yet entered the sentencing order. The Superior Court entered the sentencing order on December 10, 2008, but Brito claims he was not served with a copy. In any event, on December 19, 2008, Brito filed a notice of appeal and a motion to stay his sentence pending appeal. The Superior Court did not rule on Brito's motion, and on December 22, 2008 issued a warrant for his arrest. Brito was arrested on January 14, 2009, and two days later moved the Superior Court to quash the warrant. On January 22, 2009, Brito and the People filed a stipulated motion for his release. The following day, the Superior Court issued a show cause order requiring Brito to appear before the court on January 27, 2009, and show cause why he should not be held in contempt for failing to report to the BOC on November 28, 2008, as ordered by the court in its sentencing order. The Superior Court conducted the show cause hearing as scheduled on January 27, 2009, and while neither the record nor Brito's brief indicate how the court ultimately ruled, on January 28, 2009, the Superior Court ordered that Brito be released pending the court's final ruling.

 Brito asserts that the Superior Court's handling of the post-sentence proceedings violated his due process rights, but he does not explain what relief he is seeking from this Court. While we are troubled by the asserted errors of the Superior Court in its post-sentencing proceedings, Brito's Notice of Appeal is from the Superior Court's judgment and conviction entered on December 10, 2008, and it is ineffective to challenge the court's subsequent rulings in its contempt proceedings against Brito. *See* V.I.S.Ct.R. 5(b)(1). In fact, it is unclear from the record before the Court whether those post-sentence proceedings have finally terminated, and we will not speculate as to how the Superior Court disposed of those proceedings. Accordingly, we conclude that this Court has no jurisdiction to rule on Brito's assertions that the Superior Court violated his due process rights in conducting its post-sentence proceedings.[7] *See Brown v. People*, 49 V.I. 378, 380 (V.I. 2008) (ruling that a timely filed notice of appeal is a jurisdictional prerequisite).

---

[7] We note that while it appears that the Superior Court failed to rule on Brito's motion for stay of sentence pending appeal, his remedy in light of such failure to rule was to move this Court

## IV. CONCLUSION

The Superior Court was not required to include the facts alleged in the "to wit" clause of the Information in its supplemental jury instructions on the elements of being an accessory after the fact. Likewise, because the factual allegation in the "to wit" clause was mere surplusage, the People were not required to prove it to establish Brito's guilt, and the evidence presented at trial was sufficient to sustain his conviction. The Superior Court's exclusion of evidence, even if error in some instances, was harmless, as was the court's failure to advise Brito of his right to appeal. Finally, we have no jurisdiction to consider Brito's assertion that the Superior Court violated his due process rights in conducting its post-sentence proceedings. Accordingly, Brito's conviction will be affirmed.

---

for release pursuant to Rule 8(d) of the Supreme Court Rules. Brito never sought that relief from this Court, and it is unclear what relief he seeks from the Supreme Court at this juncture in the proceedings.